Scrugham, J.
The offer of the respondents was made on the *357 31st January, and they did not attempt to revoke it until the 3d of February. The offer was accepted by the appellants before, but the respondents did not obtain knowledge of the acceptance until after this attempted revocation. The principal question, therefore, which arises in the. case is, whether a contract was created by this acceptance, before knowledge of it reached the respondents.
The case of Mactier v. Frith, in the late court of errors (6 Wend., 103) settles this precise question, and was so regarded by this court in Vassar v. Camp (1 Kern., 441), where it is said that the principle established in the case of Mactier v. Frith was, “that it was only necessary that there should be a concurrence of the minds of the parties upon a distinct proposal, manifested by an overt act; that the sending of a letter announcing a consent to the proposal was a sufficient manifestation, and consummated the contract from the time it was sent.”
There is nothing in either the case of Mactier v. Frith, nor in that of Yassar v. Camp indicating that this effect is given to the sending of a letter, because it is sent by mail through the public post-office; and in fact, the letter referred to in the first case could not have been so sent, for it was to go from the city of New York to Jaemel, in the island of St. Domingo, between which places there was at that time no communication by mail.
The sending of a letter accepting the proposal is regarded as an acceptance, because it is an overt act, clearly manifesting the intention of the party sending it to close with the offer of him to whom it is sent, and thus making that “aggregatio mentium” which is necessary to constitute a contract.
Justice Mabcy, in delivering the leading opinion m Mac-tier v. Frith says: “ What shall constitute an acceptance will depend, in great measure, upon circumstances. The mere determination of the mind, unacted on, can never be an acceptance. Where the offer is by letter, the usual mode of acceptance is the sending of a letter announcing a consent to accept; where it is made by a messenger, a determination to accept, returned through him, or sent by another, would seem to be all the law requires, if the contract may be consummated without writing. There are other modes which are equally conclusive upon the parties; keeping silence, under certain circumstances, *358 is an assent to a proposition; anything that shall amount to a manifestation of a formed determination to accept, communicated; or put in the proper way to be communicated to the party making the offer, would doubtless complete the contract.”
It was agreed between these parties that their business should be transacted through the medium of the telegraph. The object of this agreement was to substitute the telegraph for other methods of communication, and to give to their transactions by it the same force and validity they would derive if they had been performed through other agencies.
In accordance with this agreement, the offer was made by telegraph to the appellants in New York; and the acceptance) addressed to the respondents in New Orleans, was immediately dispatched from New York, by order of the appellants.
It cannot, therefore, be said that the appellants did not pul their acceptance in a proper way to be communicated to the respondents, for they adopted the method of communication which had been used in the transaction by the respondents, and which had been selected by prior agreement between them, as that by means .of which their business should be transacted.
Under these circumstances the sending of the despatch must be regarded as an acceptance of the respondents’ offer, and thereupon the contract became complete.
I cannot conceive upon what principle an agreement to communicate by telegraph can be held to be in effect a warranty by each party that his communication to the other shall be received. On the contrary, by agreeing beforehand to adopt that means of communication, the parties mutually assume its hazards, which are principally as to the prompt receipt of the despatches.
The referee finds as a fact that the respondents answered the telegram of the appellants, asking at what price they would sell 100,000 Mexican dollars, by another telegram, as follows) viz.:
“ Treyob & Colgate, New York: Will deliver fifty thousand at seven and one-quarter, per ‘Moses Taylor.’ Answer.
John Wood & Co.”
It was proved on the trial that this telegram was sent by the *359 respondents; and a letter of the same date, signed by them» repeating the telegram and stating that they had sent it, was read in evidence.
This affords sufficient evidence of subscription by the respondents to take the case out of the statute of frauds.
The judgment should be reversed.
All the judges concurred; except that Bocees and Grover, JJ.. concurred only in the result.
Judgment reversed.